## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CONSUMERS UNIFIED, LLC, d/b/a CONSUMERAFFAIRS; and CONSUMERAFFAIRS.COM HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> NRRM, LLC, d/b/a CARSHIELD; CARCHEX, LLC; and HOMESAFE, LLC, a/k/a HOMESAFE, LLC OF WYOMING, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CASE NO. 23-CV-436-JFJ

### AMENDED OPINION AND ORDER[1]

Before the Court is Defendant NRRM, LLC d/b/a CarShield's ("CarShield") Motion to Dismiss and, in the Alternative, Transfer (ECF Nos. 17, 36), Defendant HomeSafe, LLC a/k/a HomeSafe, LLC of Wyoming's ("HomeSafe") Motion to Dismiss and, in the Alternative, Transfer (ECF Nos. 34, 38), and Defendant Carchex, LLC's ("Carchex") Motion to Sever and Dismiss or, in the Alternative, To Transfer (ECF No. 31, 37).  On June 11, 2024, the Court held a telephone hearing on the pending motions to clarify the parties' requests for relief and the underlying issues. For reasons explained below, all motions are DENIED.

### I.     Summary

There are four pending federal cases involving these parties.  All four cases were filed after a dispute arose between Plaintiffs and Defendants regarding amounts owed for unpaid invoices under services contracts.  Plaintiffs made a pre-suit demand of all three Defendants.  Defendant CarShield expressly refused to pay, asserting that the contracts and/or Plaintiffs' overall business

---

[1] This Amended Opinion and Order amends and supersedes the Opinion and Order filed September 30, 2024 (ECF No. 80).  The Court inserted an inadvertently omitted citation on page 23 and an inadvertently omitted word on page 25.  The original Opinion and Order (ECF No. 80) is vacated.

model were illegal.  Plaintiffs filed suit against all three Defendants in Oklahoma, and Defendants later filed separate cases against Plaintiffs in three different venues.[2]  After the suits were filed, Defendants paid amounts demanded by Plaintiffs for the unpaid invoices.  Defendants seek dismissal of the Oklahoma case on various grounds, including (1) lack of subject matter jurisdiction based on mootness; (2) improper anticipatory filing; and (3) violation of a forum selection clause.  In the alternative, all Defendants seek severance and transfer of claims against them to other federal district courts.

The Court holds: (1) Plaintiffs' claims are not moot; (2) Plaintiffs did not engage in improper anticipatory filing; (3) the factors weigh against severance and transfer of this case to multiple competing venues; and (4) exceptional circumstances weigh against severance, transfer, and/or dismissal of one Defendant's claims to Delaware, despite the existence of a forum selection clause.  As the Court explains in its transfer analysis, there is no ideal venue for resolution of these parties' contractual and other disputes.  Although not moot, Plaintiffs' breach of contract claims have been substantially reduced due to Defendants' payments of the unpaid invoices.  This weighs in favor of transferring this case to districts with the more substantive claims *against* Plaintiffs in Defendants' selected forums.  But the procedural alternative presented by Defendants does not serve judicial economy.  Defendants seek to sever this case into three different cases and transfer them to three different venues, including opening an entirely new case in Delaware.  This would result in piecemeal litigation of similar or identical issues between similarly situated parties in four different courts, with potentially competing judgments regarding the legality of Plaintiffs' contracts and/or business model.  Further, Defendants failed to show that any forum other than Oklahoma has jurisdiction over all pending claims.  On balance, Oklahoma is the most efficient

---

[2] Plaintiffs allege all Defendants have common ownership under the CarShield umbrella.  ECF No. 8 ¶¶ 4-6.

venue for resolving these parties' disputes, and the Court declines to transfer any of Plaintiffs' claims.

## II.   Allegations in Complaint

Plaintiffs Consumers Unified, LLC d/b/a ConsumerAffairs ("ConsumerAffairs") and ConsumerAffairs.com Holdings, LLC ("CA Holdings") (together, "Plaintiffs") filed this action to recover against the defendants for alleged breach of contract, unjust enrichment, and declaratory judgment. First Am. Compl. (ECF No. 8). Plaintiff ConsumerAffairs is a Nevada limited liability company headquartered in Tulsa, Oklahoma, with its sole member being CA Holdings, and Plaintiff CA Holdings is a Delaware limited liability company with members who are citizens of multiple states. *Id.* ¶¶ 1-2. Defendant CarShield is a Missouri limited liability company whose members reside in Missouri; Defendant HomeSafe is a Wyoming limited liability company that is wholly owned by CarShield; and Defendant Carchex is a Maryland limited liability company that is wholly owned by CarShield. *Id.* ¶¶ 4-6. Plaintiffs allege, therefore, that both Carchex and HomeSafe are wholly owned by CarShield. *Id.* ¶¶ 5-6.[3]

According to the First Amended Complaint, ConsumerAffairs is a for-profit company that operates a website that provides information for consumers, including reviews and ratings. *Id.* ¶ 11. The website is free to consumers, and ConsumerAffairs earns income by having businesses pay ConsumerAffairs for data collected from ConsumerAffairs' website. *Id.* ¶ 12. Businesses that contract with ConsumerAffairs for this information are called "Authorized Partners," and Defendants were Authorized Partners pursuant to several agreements. *Id.* ¶¶ 12, 14-21. ConsumerAffairs and CarShield's agreements included an amendment under which HomeSafe was made a "Member Affiliate" of CarShield, while ConsumerAffairs and Carchex entered into a separate series of agreements. *Id.* ¶¶ 15-21. Plaintiffs allege that all Defendants

---

[3] CarShield and HomeSafe are represented by the same counsel. Carchex is represented by different counsel.

refused to pay invoiced amounts to ConsumerAffairs, and that Defendants refused to pay the invoices on grounds that their agreements with Plaintiffs are unenforceable, illegal contracts. *Id.* ¶¶ 22-26.

Plaintiffs assert the following causes of action against Defendants: (1) breach of contract for failure to remit payments for services rendered pursuant to the various agreements with ConsumerAffairs (Counts I and II); (2) unjust enrichment (Counts III and IV); and (3) declaratory judgment as to the legality and enforceability of the agreements between Defendants and ConsumerAffairs under state and federal law (Count V). *Id.* ¶¶ 27-48.

Plaintiffs seek damages collectively against CarShield and HomeSafe totaling "$526,575.00, plus late payment fees at the rate of 1.5% per month or the maximum amount permitted by law, pre- and post-judgment interest, and costs and fees, including attorney fees, to collect payment." *Id.* ¶ 30.[4] Plaintiffs seek judgment against Carchex in the amount of "$523,618.50, plus late payment fees at the rate of 1.5% per month or the maximum amount permitted by law, pre- and post-judgment interest, and costs and fees, including attorney fees, to collect payment." *Id.* ¶ 35. Plaintiff's unjust enrichment claims, which are pled in the alternative, are premised on Defendants' unjust receipt of benefits without payments. *Id.* ¶¶ 37-40 (CarShield and HomeSafe), ¶ 41-44 (Carchex). Plaintiffs seek identical money damages on the unjust enrichment claims. *See id.* ¶¶ 40, 44.

## III. Parties' Filings

### A. Initial Briefing on Motions

Each of the three Defendants in this case filed its own motion seeking dismissal or transfer of Plaintiffs' claims to another jurisdiction. CarShield and HomeSafe seek dismissal of Plaintiffs' claims for improper anticipatory filing. In the alternative, CarShield requests transfer of Plaintiffs'

---

[4] This is comprised of $509,775.00 against CarShield and $16,800.00 against HomeSafe. ECF No. 8 ¶¶ 22-23.

claims to the Eastern District of Missouri, where CarShield has a separate case pending against Plaintiffs for federal Lanham Act and state law trademark infringement, federal false advertising, federal unfair competition, federal trademark dilution, breach of contract, and declaratory judgment that CarShield's contracts with Plaintiffs are illegal (the "Missouri case").  *See* ECF No. 24-7 (CarShield Compl. against Plaintiffs and other parties filed Oct. 23, 2023, in E.D. Mo. Case No. 23-cv-1333-CDP).  HomeSafe requests in the alternative that Plaintiffs' claims be transferred to the District of Colorado, where HomeSafe's own case, similar to CarShield's, is pending against Plaintiffs (the "Colorado case").  *See* ECF No. 24-8 (HomeSafe Compl. against Plaintiffs and other parties filed Oct. 25, 2023, in D. Colo. Case No. 1:23-cv-2788).  At the hearing held on June 11, 2024, CarShield and HomeSafe clarified that they sought to sever their claims from each other and from Carchex for purposes of transfer, in the event the Court declined to dismiss all of Plaintiffs' claims.

Unlike CarShield and HomeSafe's contract with Plaintiffs, Carchex's contract with Plaintiffs contains a Delaware forum selection clause.  Carchex requests dismissal of Plaintiffs' claims against it for violation of the forum selection clause.  In the alternative, Carchex seeks transfer of Plaintiffs' claims against it to the District of Delaware, although its case against Plaintiffs is pending in Maryland.  Carchex sued Plaintiffs in Maryland for (1) federal Lanham Act false advertising and unfair competition regarding Plaintiffs' alleged "pay-to-play" system and (2) federal Lanham Act false advertising regarding warranties (the "Maryland case").  *See* ECF No. 40-9 (Carchex Compl. against Plaintiffs and Consumers Unified Insurance Agency LLC, filed Dec. 8, 2023, D. Md. Case No. 1:23-cv-3350).  Carchex contends it has not acted inconsistently with the forum selection clause, because its Maryland case does not arise from or relate to the contract.  Carchex also seeks to sever its claims from those against the other Defendants.

If the Court denies their motions to dismiss, Defendants are requesting the Court to permit a total of four related cases involving the same parties and similar issues to proceed in Missouri,

Colorado, Maryland, and Delaware.  Plaintiffs oppose dismissal and argue that this case should remain in this Court, in anticipation of Defendants' cases being transferred to Oklahoma as the first-filed court.  The Missouri, Colorado, and Maryland cases have been stayed pending resolution of the three motions before this Court.  *See* ECF No. 24 in E.D. Mo. Case No. 23-cv-1333-CDP; ECF No. 11 in D. Colo. Case No. 1:23-cv-2788; ECF No. 39 in D. Md. Case No. 1:23-cv-3350.[5]

### B.    Post-Briefing Events and Supplemental Briefs

After briefing was completed on Defendants' motions, certain events shifted the course of litigation.  In advance of a settlement conference to be held on April 17, 2024, Plaintiffs submitted their demand for monetary damages to Defendants.  *See* ECF Nos. 71-1, 72-1 (April 15, 2024, email from Plaintiffs' counsel to defense counsel containing Plaintiffs' demand for damages). Plaintiffs' demand was for the full amounts sought in the First Amended Complaint for all unpaid invoices, penalties, and interest against all three Defendants.  Defendants wired those amounts to Plaintiffs.  *See* ECF Nos. 71-2, 71-3, 71-4, 72-2 (bank wire confirmations dated Apr. 16, 2024).[6] The litigation was not settled at the April 17, 2024, settlement conference.  ECF No. 66 (settlement conference report).  Plaintiffs retained the money.  ECF No. 76 at 3; ECF No. 77 at 3 n.2. Defendants requested Plaintiffs provide them with a reasonable attorney fee request to resolve that remaining issue, but Plaintiffs declined to provide any request.  *See* ECF No. 71 at 6; ECF No. 72 at 2.

Defendants then filed opposed "supplemental" briefs seeking dismissal of all of Plaintiffs' claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

---

[5] Although not conclusive, this indicates such courts may ultimately transfer to the first-filed forum if the Court denies Defendants' pending motions to dismiss or transfer.

[6] CarShield wired the funds for itself and on behalf of Carchex.  ECF Nos. 71-2, 71-4.  HomeSafe wired the funds for itself out of a separate account.  ECF No. 71-3.

ECF Nos. 71, 72.[7]  Defendants argue Plaintiffs' claims are moot in light of Defendants' payment of the demanded amounts on Plaintiffs' breach of contract and unjust enrichment claims. Defendants argue the remaining claim for declaratory judgment is "superfluous," while the outstanding attorney fee issue is merely an "attempt to manufacture a dispute" by refusing Defendants' requests to pay.  ECF No. 76 at 1, 3.

## IV.     Defendants' Rule 12(b)(1) Motions to Dismiss – Mootness

### A.      Rule 12(b)(1) Standards

When a party seeks dismissal under Rule 12(b)(1), it can launch a facial or factual attack on the complaint.  *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). When reviewing a facial attack, "the district court must accept the allegations in the complaint as true."  *Id.*  "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based."  *Id.* (citation omitted).  When reviewing a factual attack, "a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Id.* (quotation omitted).  In this context, the court's "exercise of such discretion" does not convert the motion into a Rule 56 summary judgment motion "unless resolution of the jurisdictional question is intertwined with the merits."  *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (cleaned up).

Defendants did not specify which type of jurisdictional attack they were raising.  Based on Defendants' reliance on exhibits beyond the pleadings and answers to the Court's questions during oral argument, the Court finds Defendants are mounting a factual attack.  Plaintiffs do not object to the Court's consideration of evidence submitted by Defendants, and they have not submitted contrary evidence in opposition to Defendants' jurisdictional arguments.  The jurisdictional issues

---

[7] Although Defendants' supplemental briefs are unclear as to the legal basis for seeking dismissal, defense counsel clarified at the June 11, 2024, hearing that they were seeking Rule 12(b)(1) dismissals for lack of subject matter jurisdiction.

regarding mootness are not intertwined with the merits of the case.  The Court will therefore consider all evidence in the record to determine whether jurisdiction exists without converting the motion into a Rule 56 motion for summary judgment.

### B.  Mootness Standard

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Schell v. Oxy USA, Inc.*, 814 F.3d 1107, 1113 (10th Cir. 2016) (quotation omitted).  When a defendant seeks dismissal based on mootness, the defendant bears the burden to prove a case or controversy no longer exists.  *WildEarth Guardians v. Pub. Serv. Co. of Colorado*, 690 F.3d 1174, 1183 (10th Cir. 2012) (citing *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221 (2000)).  "A case, although live at the start, becomes moot when intervening acts destroy a party's legally cognizable interest in the outcome of adjudication." *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004).  "In such a case, Article III would deprive the federal courts of jurisdiction over that party's claim." *Id*.

In considering mootness, a court must ask whether "granting a present determination of the issues offered will have some effect in the real world." *Fleming v. Gutierrez*, 785 F.3d 442, 444-45 (10th Cir. 2015) (cleaned up).  If events occur mid-litigation that "make it impossible for the court to grant any effectual relief" to a prevailing party, a court should dismiss the case rather than issue an advisory opinion. *Id.*  If a party has a remaining concrete interest in the outcome of the action, "however small," a court should not dismiss the case as moot. *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).

### C.  Breach of Contract and Unjust Enrichment Claims Are Not Moot

The undisputed facts show that (1) Plaintiffs accepted payments from Defendants totaling over $1 million, and (2) such payments constituted the full amount of unpaid invoices under the contracts, including penalties and prejudgment interest.  An accepted wire transfer into an opposing party's bank account can function to moot a claim, so long as the payment affords the

plaintiff "complete relief." *See Prairie Band Potawatomi Nation v. Yellen*, 63 F.4th 42, 45 (D.C. Cir. 2023) (explaining that mootness may occur "when the court can provide no effective remedy because a party has already obtained all the relief that it sought") (cleaned up) (finding claim moot where tribe received all monetary distributions sought in the case); *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (finding plaintiff's claim moot after defendant paid plaintiff all ERISA benefits requested in complaint); 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.2 (3d ed. 2008) ("Action by the defendant that simply accords all the relief demanded by the plaintiff may have the same effect as settlement or an offer of settlement.  So long as nothing further would be ordered by the court, there is no point in proceeding to decide the merits.").  *Cf. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 163-64 (2016), *as revised* (Feb. 9, 2016) (contrasting an "unaccepted" settlement or offer of judgment, where no money ever changes hands, with cases where the defendant "had actually deposited the full amount demanded" in a bank account and therefore "fully satisfied" the claims).

The Court concludes Defendants failed to meet their burden of showing Plaintiffs have been afforded "complete relief" on the contract claims.  Here, Plaintiffs seek attorney fees as part of their contract damages.  *See* ECF No. 8 ¶¶ 30, 35 (demand for attorney fees for breach of contract).[8]  This aspect of Plaintiffs' contract damages, although likely small in relation to the other damages already paid, remains unresolved and saves the contract claims from mootness.  *See Duringer v. The Hartford Life & Accident Ins. Co.*, No. CV 13-74-M-DLC, 2014 WL 12596462, at *7 (D. Mont. Feb. 5, 2014) (finding breach of contract claim not moot, where plaintiff continued to seek attorney fees as damages despite full payment of actual damages due under contract).  *Cf.*

---

[8] The contracts provide that "[m]ember [Defendants] shall pay all costs and fees (including attorneys' fees) incurred by [Plaintiffs] to collect late or unpaid payments."  ECF No. 44 at 4, § 7.2 (sealed) (Master Accreditation Agreement between ConsumerAffairs and Carchex); ECF No. 44 at 15, § 7.2 (sealed) (Master Accreditation Agreement between ConsumerAffairs and CarShield). During oral argument, the parties agreed that attorney fees were owed under the contracts, rather than any statute or decisional law.

*Beatley v. Ayers*, 851 F. App'x 332, 336 (4th Cir. 2021) (holding that mid-litigation payment of full amount sought mooted breach of contract claim but also stating that, "*because the Agreement did not provide for attorney's fees* in the event of a breach, the payment gave Beatley everything he was entitled to receive on that claim—$134,000 plus interest") (emphasis added). *See generally* 13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.3 (3d ed.) ("So too a claim for fees as part of the relief on the underlying claim survives; a fee award in these circumstances is treated as any other claim for damages."). Here, the Court finds it improper to award a judgment of contract-based attorney fees in the absence of an agreement or a finding of liability under the contract. Neither has yet occurred. Defendants wired funds without first obtaining a settlement agreement, or any other agreement that Plaintiffs would dismiss their claims and "settle up" attorney fees in the future. Defendants risked that Plaintiffs would retain the funds but refuse to amicably resolve the fee dispute and/or voluntarily dismiss their claims in the absence of an agreed judgment. This outstanding issue of liability and amounts owed for contract-based attorney fees saves the contract claims from mootness.

Defendants argue that the Court could dismiss the contract claims as moot and decide the remaining attorney fee issues in an equitable proceeding. Defendants are correct that, in some cases, a claim for attorney fees "is not part of the merits of the action to which the fees pertain" and therefore does not save a claim from mootness. *Anderson v. U.S. Dep't of Health & Hum. Servs.*, 3 F.3d 1383, 1385 (10th Cir. 1993) (cleaned up). "[W]hether an application for fees is based on a statute or decisional law," a motion for attorney fees is generally "deemed ancillary to the merits of the controversy and its pendency does not affect the finality of the merits resolution." *Id.* (cleaned up). In such cases, the claim for attorney fees may "survive[] independently under the court's equitable jurisdiction." *Id.* (quotation omitted). *See also Schell v. OXY USA Inc.*, 814 F.3d 1107, 1123 (10th Cir. 2016) ("A claim for attorneys' fees may remain viable even after the underlying cause of action becomes moot."); *Citizens for Responsible Gov't State Political Action*

*Comm. v. Davidson*, 236 F.3d 1174, 1183 (10th Cir. 2000) (explaining that "a plaintiff may still recover (and a defendant may still contest) fees even when the merits have been rendered moot").

This authority does not apply to Plaintiffs' contract-based fee claims.  Plaintiffs' requests are not based on "statute or decisional law," and they are not "ancillary" to the merits.  Defendants' argument is also inconsistent with the Federal Rules of Civil Procedure, which permit an attorney fee request to be made by separate motion following a judgment, *unless* the law requires the fees to be proved at trial "as an element of damages."  Fed. R. Civ. P. 54(d)(2)(A).  As explained in the committee notes, Rule 54(d)(2)(A)'s procedures generally do not apply to "fees recoverable as an element of damages, *as when sought under the terms of a contract*; such damages are typically to be claimed in a pleading and may involve issues to be resolved by a jury."  Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment (emphasis added).  Given this legal framework applicable to contract-based attorney fees, the Court is not persuaded to dismiss the contract claims as moot and decide the attorney fee claims in a purely "equitable" proceeding.

Defendants also argue the attorney fee claim should be declared moot, because Defendants stand ready to pay reasonable attorney fees, if Plaintiffs would only make a demand.  Plaintiffs' refusal to make a fee demand is Plaintiffs' prerogative.  The Court cannot force Plaintiffs to settle this aspect of their contract claims, and Defendants lost the leverage to force Plaintiffs to do so.  Nor can the Court assume the fee dispute will be readily resolved once Plaintiffs make a demand.  In fact, Plaintiffs argue that attorney fees "will no doubt be disputed," because Plaintiffs also seek fees incurred in multiple other venues.  ECF No. 75 at 4.  The Court would be dismissing the contract claims as moot, when there are remaining "real world" disputes to resolve on such claims.

Plaintiffs have a remaining concrete interest in the outcome of the breach of contract claims – namely, contract damages in the form of attorney fees.  This prevents the contract claims from being dismissed as moot.  *See Knox*, 567 U.S. at 307 (any concrete interest in the outcome, however

11

small, saves case from mootness).  Defendants' motions to dismiss the breach of contract claims as moot are DENIED.

Correspondingly, Plaintiffs' unjust enrichment claims are not mooted by Defendants' payment of the amounts demanded for unpaid services under the contracts.  The unjust enrichment claims are pled in the alternative to the contract claims, which are not fully resolved.  Further, as explained below, there remains a pending dispute regarding the legality of the contracts.  In the event the contracts are declared unenforceable, this could give rise to the alternative equitable claims.  Defendants' motions to dismiss the unjust enrichment claims as moot are DENIED.

### D.    Declaratory Judgment Claims Are Not Moot

It is well settled that mootness principles apply to declaratory judgment claims.  *Moongate Water Co., Inc. v. Dona Ana Mut. Domestic Water Consumers Ass'n*, 420 F.3d 1082, 1088 (10th Cir. 2005).  "In the declaratory-judgment context, the mootness inquiry looks to whether the requested relief will actually alter the future conduct of the named parties."  *Schell*, 814 F.3d at 1114 (citing *Hewitt v. Helms,* 482 U.S. 755, 761 (1987)) (stating that "[t]he real value of the judicial pronouncement – what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion – is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*") (emphasis in original).  "'The crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world.'"  *Schell*, 814 F.3d at 1114 (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010)) (emphasis in original).  Generally, "if a case is otherwise moot, the existence of a prayer for declaratory relief does not keep the case alive."  *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1265 (10th Cir. 2004) (McConnell, J., concurring) (citing *Preiser v. Newkirk*, 422 U.S. 395 (1975), *Golden v. Zwickler*, 394 U.S. 103 (1969)).

The declaratory judgment claims against CarShield and HomeSafe are not moot, because the Court's entry of a judgment in favor of Plaintiffs would have a real-world effect on the mirror-

image declaratory judgment claims asserted by CarShield and HomeSafe in other venues. CarShield and HomeSafe have each filed related cases in Missouri (CarShield) and Colorado (HomeSafe). Each case includes breach of contract and declaratory judgment claims pertaining to the same agreements between ConsumerAffairs and CarShield/HomeSafe. Specifically, both CarShield and HomeSafe seek damages for breach of contract *against Plaintiffs*, and a declaration that the contracts between CarShield/HomeSafe and ConsumerAffairs are illegal and void. *See* ECF No. 24-7 at 15-17 (Compl. in Missouri case); ECF No. 24-8 at 7-8 (Compl. in Colorado case). A judgment in Plaintiffs' hands that the contracts are legal would impact the outcome of those pending claims.

Recognizing this hurdle to mootness, CarShield and HomeSafe "promised" in their briefing to withdraw any claims for breach of contract and declaratory relief against Plaintiffs, if the Court dismisses Plaintiffs' claims against them. *See* ECF No. 71 at 8. Under the stringent standard for determining whether a case has been mooted by the defendant's voluntary conduct, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000). In this regard, a "mere promise to behave in a certain way at a future time does not moot a controversy." *Brinkman v. Half-Marathon*, No. 2:05CV00009, 2005 WL 8175141, at *1-2 (D. Utah Oct. 5, 2006) (concluding that defendant's written guarantee to cease challenged practice did not provide the required "absolute clarity" that issue would not recur in future). CarShield's and HomeSafe's mere promises, in the absence of actual dismissals of their competing claims, are not sufficient. Their "wait and see" approach dooms their attempt to render Plaintiffs' declaratory judgment claims moot.

Unlike CarShield and HomeSafe, Carchex did not file any breach of contract or declaratory judgment claims when it filed suit in Maryland. Its claims are limited to two tort claims of false advertising/unfair competition under the Lanham Act, which Carchex argues are unrelated to its

now-terminated contracts with Plaintiffs.  The "real-world" impact of resolving Plaintiffs' declaratory judgment claim against Carchex is less clear than for the other two Defendants that have competing contract-based claims.  However, the breach of contract claims against all Defendants remain active due to the unresolved attorney fee issues.  Correspondingly, the Plaintiffs' declaratory judgment claim seeking a declaration of the contract's enforceability cannot be declared moot as to any Defendant at this juncture.  Carchex's behavior would be altered by resolution of Plaintiffs' breach of contract and corresponding declaratory judgment claims, because there are remaining amounts for attorney fees owed on the contracts.  Further, at the June 11, 2024, hearing, Carchex's counsel would not state on the record that Carchex would never litigate the legality of its contract with ConsumerAffairs, in the event Plaintiffs' contract claims remained active but were transferred to another forum.  Therefore, Carchex has also failed to show that Plaintiffs' declaratory judgment claim against it is moot.  Defendants' request to dismiss the declaratory judgment claims as moot is DENIED.

## V.     CarShield/HomeSafe's Motion to Dismiss – Anticipatory Filing

Because the Court declined to dismiss all claims as moot, the Court must proceed to address other potential grounds for dismissal.

In their original motion to dismiss, CarShield and HomeSafe request dismissal of all Plaintiffs' claims against them based on the "anticipatory filing" exception to the "first to file" rule.  ECF Nos. 18, 34.[9]  "The Tenth Circuit generally follows the first to file rule."  *Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1164-65 (N.D. Okla. 2010) (collecting cases).  Under the first to file rule, "'when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap.'"  *Id.* at 1165 (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)).

---

[9] HomeSafe filed its own brief in support of its Motion, but the brief adopted CarShield's arguments on anticipatory filing.  ECF No. 34.

This rule is a "discretionary doctrine." *Id.* (quoting *Cadle*, 174 F.3d at 603) (quotation marks omitted). To determine whether the first-filed rule applies, the court should consider the chronology of actions, the similarity of the parties involved, and the similarity of issues. *Id.* at 1167-68. The parties and issues need not be identical for application of the first to file rule. Instead, substantial overlap between the parties and issues is sufficient, with the "overarching goal . . . to avoid inconsistent rulings between the two cases." *Id.* at 1168.

The first to file rule is subject to equitable exceptions, which the second-filing party must prove. *Id.* at 1165. Relevant here, an exception exists where a first-filing party engages in "anticipatory filing," or the filing of a "mirror image" lawsuit under threat of a suit to be filed by the presumed adversary in a different forum. *Morgan v. 3-B Cattle Co., Inc.*, No. 18-CV-371-GKF-FHM, 2018 WL 6651529, at *3 (N.D. Okla. Dec. 19, 2018) (citation omitted). In a contract dispute, this may occur "when a breaching party, who expects to be sued, files a declaratory judgment action in a forum convenient to it in order to pre-empt an anticipated breach of contract action in another venue." *Id.* (citation omitted). Such an exception "is intended to discourage a race 'to the courthouse door in an attempt to preempt a later suit in another forum.'" *GWACS Armory, LLC v. KE Arms, LLC*, No. 20-CV-0341-CVE-CDL, 2021 WL 217607, at *6 (N.D. Okla. Jan. 21, 2021) (quoting *Alter v. F.D.I.C.*, 57 F. Supp. 3d 1325, 1331 (D. Utah 2014)). The reviewing court "must examine the full context under which the first case was filed, and a party may not invoke the anticipatory filing exception merely because it was the first party to threaten litigation." *Id.* (citation omitted). If this exception applies, the court may, in its discretion, "dispense with the first-filed principle for reasons of equity" and "allow the second-filed case to proceed in the second-filed forum." *Nash*, 724 F. Supp. 2d at 1165 (N.D. Okla. 2010) (cleaned up). The Tenth Circuit has approved such a procedure in an unpublished Table decision. *See Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477 (Table), 1999 WL 682883, at *3 (10th Cir. Sept. 2, 1999) ("A district court may decline to follow the first-to-file rule

and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction.").

The Court finds that the first to file rule applies.  The parties are substantially similar between this case and the Missouri case (CarShield) and the Colorado case (HomeSafe).  The issues of breach of contract and declaratory judgment that the contracts between (1) ConsumerAffairs and CarShield and (2) ConsumerAffairs and HomeSafe, are legal/illegal and enforceable/unenforceable are essentially mirror-image claims pertaining to the very same agreements between (1) ConsumerAffairs and CarShield (Missouri case) and (2) ConsumerAffairs and HomeSafe (Colorado case).  The Court further finds that Plaintiffs' lawsuit, filed on October 10, 2023, was the first-filed case, with CarShield filing the Missouri case on October 23, 2023, and HomeSafe filing the Colorado case on October 25, 2023.  Unless an exception applies, Plaintiffs' choice of forum should prevail under the first to file rule.

The Court finds the "anticipatory filing" exception does not apply.  The undisputed evidence shows the following sequence of events.  On September 20, 2023, Plaintiffs sought overdue payment for services pursuant to the agreements with CarShield and HomeSafe, with CarShield and HomeSafe failing to respond to multiple email requests for payment.  *See* ECF Nos. 24-2, 24-3 (email correspondence between ConsumerAffairs and CarShield representatives dated Sept. 2023).[10]  CarShield then sent a letter to Plaintiffs dated October 4, 2023, which stated that Plaintiffs' business model was illegal.  ECF No. 24-4.[11]  The letter declared that "CarShield's contract with Consumer Affairs is an unenforceable illegal contract" and "CarShield does not owe ConsumerAffairs under an illegal agreement."  *Id.*  CarShield stated in the letter that it was willing

---

[10] Although the cited email chains refer only to CarShield, Plaintiffs represent that the email chains actually referred to both CarShield and HomeSafe.  ECF No. 24 at 8.  CarShield and HomeSafe do not dispute this representation.

[11] Plaintiffs allege, and Defendants do not dispute, that the letter sent by CarShield's counsel was intended to represent all three Defendants.  *See* ECF No. 43 at 3.

to "compromise the matter by paying [ConsumerAffairs] on invoices" upon ConsumerAffairs' signing of a proposed settlement agreement to stop using CarShield's trademarks. *Id.* CarShield gave ConsumerAffairs until October 10, 2023, to resolve the matter or CarShield would sue ConsumerAffairs for false advertising, unfair competition, and trademark infringement, and to have the agreement for services rendered invalid. *Id.* On October 10, 2023, Plaintiffs filed the Complaint in this case seeking damages for breach of contract/unjust enrichment, and a declaratory judgment as to the legality and enforceability of the contracts with CarShield/HomeSafe. CarShield then filed its own complaint in the Missouri case on October 23, 2023. HomeSafe filed its complaint in the Colorado case on October 25, 2023.

This sequence of events shows that *Plaintiffs* initiated correspondence with CarShield and HomeSafe over payment of invoices, which CarShield and HomeSafe then refused to pay based on their declaration that Plaintiffs' contracts and/or business model was illegal.[12] By the time Plaintiffs filed suit for breach of contract/unjust enrichment and declaratory judgment, it was clear that CarShield and HomeSafe did not intend to pay their invoices, unless Plaintiffs agreed to their terms. Plaintiffs did not improperly "race to the courthouse" by filing this suit. Plaintiffs are the natural plaintiffs on the breach of contract claims, as Plaintiffs were already seeking payment for unpaid invoices at the time Defendants declared no payment was due.

Although Plaintiffs also filed a declaratory judgment claim in their preferred forum, this does not weigh heavily in favor of finding improper anticipatory action where Plaintiffs also brought legitimate claims for unpaid invoices. Moreover, the fact that Plaintiffs filed this case in their preferred forum, which is inconvenient to CarShield and HomeSafe, does not demonstrate that Plaintiffs engaged in improper forum shopping. No forum is equally convenient to all parties. Considering the circumstances and the history leading up to Plaintiffs' filing of this lawsuit, the

---

[12] This is essentially the same legal theory now being asserted by Defendants in three separate venues, although Carchex did not directly sue under the contract.

Court finds CarShield and HomeSafe failed to demonstrate that an "anticipatory filing" exception applies.  CarShield and HomeSafe's motion to dismiss based on improper anticipatory filing is DENIED.

## VI.    Severance and Convenience Transfer – All Defendants

Because the Court finds no grounds for dismissal, the Court must address whether to sever and/or transfer any of Plaintiffs' claims to other venues.

Each of the three Defendants alternatively requests severance of the respective claims against them and transfer of those claims to their preferred venue.  Carchex seeks transfer to the District of Delaware pursuant to the forum selection clause in its agreement with Plaintiffs.  CarShield seeks transfer to the Eastern District of Missouri, where the Missouri case is pending.  HomeSafe seeks transfer to the District of Colorado, where the Colorado case is pending.

### A.    28 U.S.C. § 1404(a) Convenience Transfer – General Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  There may be circumstances in which the "first court to acquire jurisdiction may not be ideally suited to decide the merits," even where the first to file rule would generally apply to favor a plaintiff's chosen forum.  *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018) (citation omitted).

"The party moving to transfer pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient."  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).  Section 1404(a) gives a district court discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  *Id.* at 1516 (quotation omitted).  The district court should consider a range of factors, including (1) "the plaintiff's choice of forum;" (2) "the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses;"

(3) "the cost of making the necessary proof;" (4) "questions as to the enforceability of a judgment if one is obtained;" (5) "relative advantages and obstacles to a fair trial;" (6) "difficulties that may arise from congested dockets;" (7) "the possibility of the existence of questions arising in the area of conflict of laws;" (8) "the advantage of having a local court determine questions of local law;" and (9) "all other considerations of a practical nature that make a trial easy, expeditious and economical." *Id.* (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)) (quotation marks omitted).

### B.    Application to CarShield and HomeSafe[13]

CarShield and HomeSafe argue that, because they seek affirmative relief against Plaintiffs in the Missouri and Colorado cases, they are the natural plaintiffs in their respective lawsuits. CarShield and HomeSafe ask the Court to consider that Plaintiffs have engaged in forum shopping by filing this case first in this district.  CarShield further argues the Eastern District of Missouri is well connected to the facts of Plaintiffs' case, because CarShield "is a citizen of and headquartered in Missouri, asserts damages suffered in Missouri, and Plaintiffs' website and ads infringe[] and fraudulently advertise[] throughout the United States, including in Missouri."  ECF No. 18 at 8. HomeSafe additionally argues Colorado is "at worst, an equally convenient forum."  ECF No. 34 at 2.  Plaintiffs counter that CarShield's and HomeSafe's strategy would increase both litigation costs and the potential for inconsistent rulings.  Plaintiffs point out that any forum will necessarily be inconvenient to some party, and Plaintiffs remain the natural plaintiffs in this dispute.  Because CarShield and HomeSafe had no forum selection clause in their agreements, they bear the burden of showing that Tulsa is an inconvenient forum under the usual § 1404(a) analysis.

---

[13] HomeSafe's Motion to Dismiss/Transfer incorporates the arguments contained in CarShield's Motion and Reply briefs.  ECF No. 34.  HomeSafe additionally explains in its briefing that it seeks transfer to the District of Colorado and argues it should be treated as a separate entity from CarShield.

The Court finds the interest in judicial economy to weigh heavily in favor of retaining this case. CarShield and HomeSafe undermined their own argument for transfer by filing their respective cases in two different venues. CarShield and HomeSafe's strategic choice places this Court in the difficult position of deciding whether to sever and transfer this case into multiple venues, instead of retaining the case and thereby permitting all cases to be heard in one venue. CarShield and HomeSafe admit that Missouri and Colorado are only "equally convenient" forums compared to Tulsa. On the other hand, CarShield and HomeSafe's Lanham Act claims challenging the legality of Plaintiffs' business model overlap significantly between their respective cases, which makes it likely that witnesses and other sources of proof will overlap between Defendants' cases, as well as with Plaintiffs' declaratory judgment claim in this case.

The parties did not brief the issue of convenience transfer following Defendants' payment to Plaintiffs. The Court nonetheless considered this significant shift in the litigation as part of its § 1404(a) analysis. Plaintiffs' case has now been reduced to a small contractual dispute, with a potentially wider-reaching issue of declaratory judgment. CarShield and HomeSafe's cases now seem to present the more substantive disputes. By accepting Defendants' payment rather than rejecting the payments until all contract disputes were resolved, Plaintiffs too have undermined their own argument for retaining their case in their preferred forum. This weighs against retention in Oklahoma.

Despite the complications resulting from Defendants' mid-litigation payment to Plaintiffs, the Court concludes Plaintiffs' choice of forum, the fact that Plaintiffs' case was properly first-filed, and the efficiencies of having similar issues between the same parties decided in one forum all favor keeping the case in this district. CarShield's and HomeSafe's proposal to fracture this case and transfer it in pieces to venues across the country is highly inefficient. The Court agrees with Plaintiffs that piecemeal litigation is undesirable and that this district is the most convenient forum to decide Plaintiffs' claims. Given the similar issues involving the legality of Plaintiffs'

business model in the Missouri, Colorado, and Maryland cases, there is a significant risk of inconsistent judgments among those three venues. CarShield and HomeSafe failed to demonstrate that any venue other than Oklahoma would have jurisdiction over all four pending cases. In the interest of judicial economy, the Court is amenable to transfer to Oklahoma of any of the stayed cases to this first-filed forum, in the event other courts find transfer of their respective cases appropriate. CarShield's request for transfer to the Eastern District of Missouri and HomeSafe's request for transfer to the District of Colorado are both DENIED.[14]

### C.   Application to Carchex

Carchex argues that Plaintiffs' case should be either dismissed or transferred to the District of Delaware, because the parties' agreement contains a forum-selection clause governing contract-related disputes. Specifically, § 15.3 of the agreement provides that "[a]ny dispute concerning, arising from, or related to this Agreement shall be adjudicated in the state or federal courts located in Delaware, and such courts shall have exclusive jurisdiction." ECF No. 44 at 6, § 15.3 (sealed). Despite this clause, Plaintiffs sued for unpaid invoices and declaratory judgment on the agreement in Oklahoma.

#### 1.   Validity and Enforceability of Forum Selection Clause

As an initial matter, the Court must determine whether the forum-selection clause is valid and enforceable against Plaintiffs as applied to this case. The parties do not dispute that the agreement's forum-selection clause is mandatory. Plaintiffs argue nonetheless that Carchex waived forum selection by filing the Maryland case. Carchex responds that it had no intention of waiving forum selection for agreement-related disputes by filing the Maryland case, which includes only two causes of action arising under the Lanham Act.

---

[14] Because the Court finds that transfer is unwarranted for the claims against CarShield and HomeSafe, the Court also declines to sever their respective claims under Federal Rule of Civil Procedure 21.

Because venue is a matter of procedural law, the Court applies federal law in determining the enforceability of a forum-selection clause. *See Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 845 (E.D. Va. 2014). Waiver of a forum-selection clause "cannot be found lightly." *Id.* at 849. *See also Wachovia Bank Nat. Ass'n v. EnCap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 327 (S.D.N.Y. 2010) (noting the "strong public policy" in favor of enforcing forum selection clauses) (quotation omitted). A forum-selection clause "will not be deemed waived unless (1) the party invoking the clause has taken action inconsistent with it or has delayed its enforcement, and (2) the other party would be prejudiced by its enforcement." *Kettler*, 55 F. Supp. 3d at 849-50 (quotation omitted). *See CITGO Petroleum Corp. v. Home Serv. Oil Co.*, No. 09-cv-503-CVE-PJC, 2009 WL 4348391, at *4 (N.D. Okla. Nov. 30, 2009) (explaining that "a party may waive enforcement of a forum selection clause by taking an intentional act inconsistent with enforcement of the forum selection clause"). Waiver is claim specific. Even if "a party disregards a forum selection clause and sues on a contract in an unauthorized forum, it waives the forum selection clause only for the specific claim it pursues [in the unauthorized forum]." *Wachovia*, 690 F. Supp. 2d at 328.

Plaintiffs have failed to show that Carchex's filing of the Maryland case was inconsistent with enforcing the Delaware forum-selection clause. In support of their argument for waiver, Plaintiffs rely on Carchex's complaint in the Maryland case, which generally describes the parties' former contractual relationship as background. *See* ECF No. 40-9 at ¶¶ 20-23. However, the Maryland case contains only two causes of action against Plaintiffs, both of which are for the tort of false advertising/unfair competition under the Lanham Act and relate to the alleged illegality of Plaintiffs' business model, rather than any contract-based claims. Even assuming the forum-selection clause extends to the Lanham Act claims, Carchex would only have waived forum selection for Lanham Act claims and perhaps other claims related to Plaintiffs' allegedly illegal business model. Carchex did not waive forum selection for claims pertaining to the "Fees and

Payment" section of the agreement (Section 7) or for declaratory judgment as to the agreement's enforceability. *See Wachovia*, 690 F. Supp. 2d at 328 (explaining that party may waive forum selection clause "only for the specific claim it pursues"). The Court does not find Carchex demonstrated a "clear indication of intent" to waive forum selection for Plaintiffs' claims pertaining to (1) the "Fees and Payment" section of the Agreement or (2) declaratory judgment as to the enforceability of the Agreement by bringing Lanham Act claims in Maryland. *See id.* at 327-28.[15] The Delaware forum-selection clause is valid and enforceable, and Carchex did not waive enforcement of the clause by filing the Maryland case.

### 2. Modified § 1404(a) Transfer Analysis

The Court must apply a modified § 1404(a) analysis to Carchex's claims, pursuant to the Supreme Court's instruction in *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 63 (2013). A valid forum-selection clause alters the traditional § 1404(a) analysis in three ways: (1) the plaintiff's choice of forum merits no weight, and the plaintiff bears the burden of showing why the court should not transfer the case to the agreed forum; (2) the court must deem the private-interest factors of convenience to parties, witnesses, or parties' pursuit of litigation to "weigh entirely in favor of the preselected forum," and the court may consider arguments about public-interest factors only, which will rarely defeat a transfer motion;[16] and (3) upon transfer, the transferee court will not apply the original

---

[15] Because the Court finds no intent to waive the forum-selection clause, the Court does not examine the second "prejudice" prong of the waiver test.

[16] Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine*, 571 U.S. at 62 n.6 (cleaned up). Notably, lower courts have also considered the "interest in judicial economy" and "the burden of jury duty on members of the community unconnected to the litigation." *Lawson v. Global Payments, Inc.*, No. 18-cv-3360-PAB-SKC, 2019 WL 4412271, at *6 (D. Colo. Sept. 16, 2019) (citing *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 426 (10th Cir. 2006); *Azima v. RAK Investment Auth.*, 926 F.3d 870, 875 (D.C. Cir. 2019)). The Court finds it particularly appropriate to consider those interests here, because the forum selection clause does not apply to all claims.

venue's choice-of-law rules, which in some cases may affect the public-interest considerations. *Id.* at 64-65. A "valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (cleaned up). *See id.* at 62 ("Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied.").

Courts interpreting *Atlantic Marine* have explained that "the standards set forth in *Atlantic Marine* 'depend crucially on the assumption that a valid forum selection clause will cover each individual claim.'" *Lawson v. Global Payments, Inc.*, No. 18-cv-3360, 2019 WL 4412271, at *5 (D. Colo. Sept. 16, 2019) (quoting *Eastcott v. McGraw-Hill Global Educ. Holdings, LLC*, Civ. Action No. 16-904, 2016 WL 3959076, at *1 (E.D. Pa. July 22, 2016)). Without such an assumption, "there may be a presumption *for* transfer as to some parties or claims, but a presumption *against* transfer as to others." Stephen E. Sachs, *Five Questions After Atlantic Marine*, 66 Hastings L. J. 761, 772 (2015). In the circumstance of multiple claims, some courts, "finding transfer inappropriate for the action as a whole, have used their discretion to refuse to sever cases if the parties would be forced to proceed piecemeal in separate courts." *Id.* at 773 (quotation omitted) (collecting cases). "Ultimately, these are questions of discretion." *Id.*

Plaintiffs' claims stem from more than one agreement, but only one has a forum selection clause. The other two Defendants have not requested a transfer to Delaware, which raises the possibility of multiplying the litigation. If the Court were to enforce the Carchex agreement's forum selection clause, the litigation would be split into at least four different forums. This would raise the risk of inconsistent decisions regarding the legality of the contracts among Plaintiffs and Defendants and the legality of Plaintiffs' business model based on alleged Lanham Act violations. At minimum, this would "permit a situation in which two cases involving the same issues are simultaneously pending in different District Courts," which "leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Artech Info. Sys., LLC v. ProTek Consulting*, Civ. Action No. PX-17-3468, 2018 WL 3575054, at *4 (D. Md. July 25, 2018)

(cleaned up) (declining to enforce forum selection clause where agreement did not apply to all defendants and severance of claims would "needlessly fracture this litigation and transform an otherwise fairly routine, localized business dispute into multidistrict litigation spanning the continental United States").

The splintering of the litigation resulting from enforcement of the forum selection clause makes this an "exceptional case" under the *Atlantic Marine* analysis.  The Court has been presented with only one scenario where all four existing cases potentially can be decided in one venue – namely, if this Court retains jurisdiction over its claims and other stayed cases are transferred here. Like the other two Defendants, by filing the Maryland case, Carchex undermined its own argument that its claims here should be transferred to Delaware.  Carchex asks the Court to create a fourth case in a forum where none currently exists, which is contrary to judicial economy and efficient case resolution.  *See Bigland v. FCA N. Amer. Holdings, LLC*, No. 19-11659, 2019 WL 4934512, at *6 (E.D. Mich. Oct. 7, 2019) (declining to enforce forum selection clause where clause did not apply to all of plaintiff's claims, and enforcement would force plaintiffs to litigate claims involving same facts in two separate courts, resulting in "inefficient use of judicial resources").

In addition, the public interest factors of court congestion, having local controversies decided at home, having cases tried in a forum that is familiar with the governing law, and burden of jury duty on members of a community unconnected to the litigation do not strongly favor Delaware.  However, the public interest in judicial economy weighs heavily in favor of not enforcing the forum selection clause and retaining the entire case in Tulsa, for the reasons explained above.[17]  While Tulsa does not have a particular connection to the events at issue, ConsumerAffairs is headquartered in Tulsa, and it appears to be the only venue where all cases

---

[17] Carchex disputes that this factor applies.  However, other courts in the Tenth Circuit faced with transferring only certain claims have considered the "undesirability of piecemeal litigation in multiple forums as a significant factor in the transfer analysis."  *Lawson*, 2019 WL 4412271 at *6.

can be adjudicated.   Plaintiffs have therefore met their burden of showing that exceptional circumstances exist that counsel against transfer to the contractually selected forum.   Carchex's request for transfer to the District of Delaware is DENIED.[18]

### 3.      Request for Dismissal

Carchex alternatively requests dismissal under Fed. R. Civ. P. 12(b)(6) for Plaintiffs' violation of the forum selection clause.   However, the Court has determined that exceptional circumstances under *Atlantic Marine* counsel against enforcement of the forum selection clause. As a result, Carchex's request to dismiss under Rule 12(b)(6) is also DENIED.   *See Bigland*, 2019 WL 4934512, at * 7 (denying defendant's alternative request for Rule 12(b)(6) dismissal for violating forum selection clause, after declining to enforce forum selection clause under *Atlantic Marine's* modified § 1404(a) analysis).

## VII.   Conclusion

For the reasons detailed above, Defendant CarShield's Motion to Dismiss and, in the Alternative, Transfer (ECF Nos. 17, 36), Defendant HomeSafe's Motion to Dismiss and, in the Alternative, Transfer (ECF Nos. 34, 38), and Defendant Carchex's Motion to Sever and Dismiss or, in the Alternative, to Transfer (ECF Nos. 31, 37) are **DENIED**.

**SO ORDERED** this 3rd day of October, 2024.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[18] Because the Court finds that transfer is unwarranted for the claims against Carchex, the Court also declines to sever Carchex's claims under Federal Rule of Civil Procedure 21.